# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 07-CV-3663 (JFB) (AKT)

---

AFROZE TEXTILE INDUSTRIES (PRIVATE) LTD.,

Plaintiff,

VERSUS

ULTIMATE APPAREL, INC.,

Defendant and Third-Party Plaintiff,

VERSUS

OXFORD INTERNATIONAL BUSINESS CORP., INC.,

Third-Party Defendant.

---

**MEMORANDUM AND ORDER**
July 20, 2009

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Afroze Textile Industries (Private) Ltd. ("plaintiff" or "Afroze") brings this action in diversity against defendant Ultimate Apparel, Inc. ("defendant" or "Ultimate Apparel"), arising from defendant's alleged failure to pay for goods sold and delivered. Specifically, plaintiff states the following claims, arising under New York State common law: 1) breach of contract; 2) account stated; and 3) quasi-contract.[1]

Plaintiff seeks a judgment of $395,045.00 plus interest, costs, and attorney's fees. Ultimate Apparel brings counter-claims of breach of warranty of merchantability and breach of implied warranty of fitness for a particular purpose against plaintiff,[2] and claims of

---

[1] Plaintiff brings claims of *quantum meruit* and unjust enrichment, which can be analyzed together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996)).

[2] Defendant has not moved for summary judgment granting its counter-claims. (*See* Defendant's

breach of contract, unjust enrichment, breach of warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, breach of contract indemnification, and common law indemnification against third-party defendant Oxford International Business Corporation ("third-party defendant" or "Oxford").[3] Plaintiff also brings claims against Oxford for breach of contract, quasi-contract, and indemnification.

Defendant now moves for summary judgment dismissing all claims against it. For the reasons set forth below, defendant's motion is granted in part and denied in part.

I. BACKGROUND

The Court has taken the facts described below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 statement of facts.[4] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

A. Facts

Ultimate Apparel is a clothing wholesaler corporation, duly organized under the laws of New York State, with its only office located in Bellmore, New York. (Defendant's Local Rule 56.1 Statement of Facts ("Def.'s 56.1") ¶¶ 1-2.) As a clothing wholesaler, Ultimate Apparel places orders for clothing, accepts delivery of the clothing at a public warehouse, and sells the clothing to various retailers nationwide. (*Id.* ¶ 2.) Afroze, a textile manufacturing company, is a Pakistani corporation with its principal place of business located in that country. (*Id.* ¶¶ 3-4.) Oxford is a corporation that accepts orders for the manufacture of clothing from companies such as Ultimate Apparel. (*Id.* ¶ 7.) In the spring of 2006, Ultimate Apparel contracted with Oxford for the manufacture of various items of clothing.[5] (*Id.* ¶ 8.) The contracts

---

Notice of Motion for Summary Judgment, at 1 ("Please take notice that . . . Defendant Ultimate Apparel, Inc. will move this Court . . . for an order pursuant to Fed. R. Civ. P. 56(b) and (c) granting Defendant Ultimate Apparel, Inc. summary judgment dismissing the Complaint of Plaintiff . . . in its entirety.").)

[3] By Order dated January 29, 2009, the Court granted Ultimate Apparel's motion for default judgment as against Oxford, with the extent of the damages to be determined upon the outcome of claims asserted by plaintiff against Ultimate Apparel. (*See* Docket Entry No. 27.)

[4] Where only one party's 56.1 statement is cited, the other party does not dispute the facts alleged, or there is no evidence controverting such fact, unless otherwise noted.

[5] Afroze purports to dispute this fact, stating that "[Afroze] was the manufacturer" and "Ultimate was aware of this, and [] it knew Oxford was not a manufacturer." (Plaintiff's Local Rule 56.1 Statement of Facts ("Pl.'s 56.1") ¶ 8.) However, the evidence plaintiff cites to in support of this statement is the conclusory assertion by Afroze marketing manager Tausif Hassan that "Ultimate was, at all times relevant to this matter, aware that the Garments would not be manufactured by third-party defendant Oxford, and that they would be manufactured and supplied by Afroze." (Hassan Aff. ¶ 5.) As a threshold matter, Ultimate argues that Hassan's affidavit should be afforded no weight because he was not employed by Afroze during the time period giving rise to this litigation and, therefore, lacks personal knowledge on its subject matter; however, the Court notes that a corporate representative may testify and submit affidavits based on knowledge gained from a

were memorialized by purchase orders placed by Ultimate Apparel with Oxford.[6] (*Id.* ¶ 9.)

Ultimate Apparel used the same form for each purchase order placed with Oxford. (*Id.* ¶ 10.) Each purchase order contained the date, purchase order number, vendor (Oxford), ship to location (Ultimate Apparel, care of its public warehouse in Newark, New Jersey), ship date, cancel date, and "freight on board" terms. (*Id.*) Each order also contained one or more item numbers and a description of each item of apparel to be produced, as well as the quantity, price, and total amount of the order. (*Id.*) When contracting with Oxford for the production of clothing, Ultimate Apparel did not know the identity of Afroze, the entity who ultimately manufactured the items of clothing.[7] (*Id.* ¶

---

review of corporate books and records. *See, e.g., Kelly v. City of New York*, No. 01 Civ. 8906, 2005 U.S. Dist. LEXIS 19140, at *41-42 (S.D.N.Y. Sept. 2, 2005), *aff'd in part, rev'd in part sub nom., Bey v. City of New York*, 210 Fed. Appx. 50 (2d Cir. 2006) (affirming denial of motion to strike); *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005). Thus, to the extent Hassan's affidavit is based upon his review of plaintiff's books and records, or other documents he reviewed in his official capacity as corporate representative, it can be considered under Federal Rule of Civil Procedure 56(e). That being said, any conclusory assertions offered by Hassan, unsupported by concrete particulars gleaned from a review of those corporate records, are insufficient under Rule 56(e) to create an issue of disputed fact, as set forth in further detail in the discussion section.

[6] Again, Afroze purports to dispute this fact, but its counter-statement does not respond to the factual statement set forth by Ultimate Apparel. (*See* Pl.'s 56.1 ¶ 9 ("Plaintiff disputes that the true purchase orders were altered, and asserts that the purchase orders did identify Ultimate when received by Afroze.").) Furthermore, evidentiary support provided for plaintiff's statement therein is an assertion made by Hassan "on information and belief," and it is axiomatic that "[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) (citation omitted). Therefore, plaintiff has provided no evidence supporting the allegation that the purchase orders it received did identify Ultimate Apparel, or contravening the assertion that Ultimate Apparel memorialized its contract with Oxford through a series of purchase orders.

[7] Again, Afroze purports to dispute this fact but provides no admissible evidence contravening it. Specifically, Afroze cites to the deposition testimony of Evan Platt, Vice-President of Ultimate Apparel, for the proposition that "Ultimate . . . knew of Afroze when it placed the order." (Pl.'s 56.1 ¶ 11.) However, the cited deposition testimony actually reads as follows:

> QUESTION: I believe you testified you knew [Oxford] were not manufacturers. You contracted with them to order your merchandise per se, not necessarily manufacture your merchandise?
>
> ANSWER: Right. They didn't sell the goods. From what I was told, they purchased the fabrics and they had their own quality control teams on the floor. Where they were making the goods, *I don't know*."

(Platt Dep. at 116-17 (emphasis added).) Platt's testimony in no way supports the proposed factual conclusion that Ultimate Apparel knew of Afroze at the time it contracted with Oxford for the purchase of clothing; in fact, it directly contravenes such an assertion. *See, e.g., Holtz v. Rockefeller & Co, Inc.*, 258 F.3d 62, 73 (2d Cir.

3

11.) Once Ultimate Apparel placed its purchase orders with Oxford, it did not control the process by which those items of clothing would be manufactured.[8] (*Id.* ¶ 12.) Further, at the time that Ultimate Apparel contracted with Oxford for the manufacture of the clothing items, Ultimate Apparel did not have any communications with Afroze. (*Id.* ¶ 13.)

Oxford then entered into contracts with Afroze to manufacture the clothing items that were the subject of contracts between Ultimate Apparel and Oxford.[9] (*Id.* ¶ 14.) Ultimate Apparel has produced documentary evidence suggesting that, in its contracts with Afroze, Oxford used the purchase orders issued by Ultimate Apparel, but altered them by redacting the "ship to" information identifying Ultimate Apparel, as well as the original price for each item and inserting new prices based on the rate negotiated between Oxford and Afroze.[10] (*Id.* ¶ 15.) Ultimate Apparel was unaware, at the time that Oxford contracted with Afroze to manufacture the clothing items at issue, that Oxford had done so. (*Id.* ¶ 16.) Afroze maintains that Ultimate Apparel was aware that Afroze would be manufacturing the clothing items and, by way of proof, offers a single United States Customs Service form used to clear the goods for entry into the country in October 2006 that references an invoice numbered "786-2181," which corresponds with an invoice Afroze sent to Ultimate Apparel at the public warehouse in Newark, New Jersey in September 2006 (an invoice Ultimate Apparel claims it never received). (Hassan Aff. ¶ 12; Pl.'s Ex. E.)

Because the clothing business is seasonal, it is imperative for clothing that is ordered for a particular season be shipped to the customer on time. (Def.'s 56.1 ¶¶ 17-18.) Because Afroze was late in manufacturing a portion of the clothing items ordered by Oxford, Ultimate Apparel submits that Oxford was thus unable to meet the "ship dates" set forth in the purchase orders issued by Ultimate Apparel to Oxford. (*Id.* ¶¶ 20-21.) Oxford then suggested to Ultimate Apparel that, rather than cancelling the orders, the parties modify them such that Oxford would ship the items by air cargo rather than vessel and deduct the increased shipping costs from the amount owed by Ultimate Apparel to Oxford.[11] (*Id.* ¶¶ 22-23.) Ultimate Apparel

---

2001) ("[W]here the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.") (internal quotation omitted).

[8] Afroze disputes this factual assertion and cites to the Hassan affidavit as evidentiary support thereto. However, the cited statement reads as follows: "[I]t is evident that Ultimate had control over Oxford in ordering, setting specifications for the Garments, inspecting, approving and accepting them." (Hassan Aff. ¶ 6.) As set forth in further detail *infra*, this statement does not meet the strictures of Rule 56(e), which exists to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings." *Applegate v. Top Ass'n*, 425 F.2d 92, 97 (2d Cir. 1970).

[9] Afroze's response to this assertion is supported by the statement of Hassan cited in footnote 8 and is, therefore, insufficient to raise a genuine dispute, for reasons stated therein.

[10] Afroze's response to this assertion is supported by a statement in the affidavit of Hassan made "on information and belief," and, therefore, is insufficient to create an issue of disputed fact.

[11] Afroze disputes this factual assertion, but does not cite to any record evidence in support thereof, but rather makes a legal argument. (*See* Pl.'s 56.1 ¶ 22; Hassan Aff. ¶ 18.)

4

consented to this modification.¹² (*Id.* ¶ 24.) Despite the change in shipping method, though, the clothing was still delivered to Ultimate Apparel months late.¹³ (*Id.* ¶ 25.) Specifically, an email sent from Evan Platt, Vice-President of Ultimate Apparel, to Oxford on October 19, 2006, states: "You PROMISED I would have the quilted jackets by the 30th of August. IT IS October 19, 2006 and I am still getting these goods in many shipments!" (Def.'s Ex. F.) Ultimate Apparel maintains that it did not communicate with Afroze about the timing of the shipments of the clothing.¹⁴ (Def.'s 56.1 ¶ 26.) Ultimate Apparel paid its freight forwarder Spadaro International directly for the cost of shipping the clothing items by air. (*Id.* ¶ 28.)

Afroze did not send any invoices or statements to Ultimate Apparel's sole office in Bellmore, New York. (*Id.* ¶ 29.) Rather, in September 2006, Afroze sent invoices to Ultimate Apparel, care of the public warehouse in Newark, New Jersey, where Ultimate Apparel accepted its import shipments. (Pl.'s Ex. E.) Ultimate Apparel maintains it did not see these invoices until they were produced by Afroze during the course of the instant litigation. (Def.'s 56.1 ¶ 31.) Afroze represents that one of the United States Customs Service forms used to clear the clothing items for entry into the United States was attached to an invoice issued from Afroze to Ultimate Apparel and, therefore, Ultimate Apparel was aware of the invoices prior to the onset of litigation. (Hassan Aff. ¶ 12; Pl.'s Ex. E.)

Based upon its records, Ultimate Apparel paid $578,561.96 of the amount on the invoices sued upon by Afroze in shipping costs, warehouse rental fees, refunds for merchandise returned as defective by Ultimate Apparel's customers, and direct payments to Oxford, as well as payments to Afroze, as directed by Oxford.¹⁵ (Def.'s 56.1 ¶¶ 32-38.)

In April 2007, Ultimate Apparel settled its account with Oxford concerning the purchase orders at issue. (*Id.* ¶ 40.) At that point in time, Ultimate Apparel understood that it had completed all obligations arising from the purchase orders with Oxford. (*Id.* ¶ 41.) Ultimate Apparel asserts that it was unaware that Afroze was asserting any claim against it until it received a demand letter from counsel for Afroze in August 2007. (*Id.* ¶ 42.) Afroze maintains that Ultimate Apparel was aware of potential claims Afroze might harbor because it sent invoices to Ultimate Apparel, care of the public warehouse in Newark, New Jersey, in the fall of 2006. (Hassan Aff. ¶ 14.)

---

¹² *See supra* note 11.

¹³ *See supra* note 11.

¹⁴ Afroze disputes this fact and cites to the Hassan affidavit "generally" as evidentiary support. However, several assertions contained therein are based "on information and belief." Therefore, "[b]ecause there is no way to ascertain which portions of [plaintiff's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56" to dispute Ultimate Apparel's factual assertion regarding communications between Ultimate Apparel and Afroze at the time of the shipments. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988).

¹⁵ Afroze disputes, "on information and belief," that these amounts have been paid, and cites to allegations in its own complaint as evidentiary support. As stated *supra*, statements made "on information and belief" are insufficient under Rule 56(e) to create an issue of disputed fact. *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004)

B. Procedural History

On August 30, 2007, plaintiff filed the instant action against defendant. On October 31, 2007, defendant filed its answer, counter-claims against plaintiff, and third-party complaint against third-party defendant. On January 8, 2008, plaintiff filed its answer to defendant's counter-claims, as well as its complaint against third-party defendant. Defendant moved for a judgment of default against third-party defendant on July 29, 2008. By Order dated January 29, 2009, the Court granted the motion. On February 27, 2009, defendant moved for summary judgment dismissing plaintiff's complaint in its entirety. Plaintiff filed its opposition on May 4, 2009. Defendant submitted its reply on June 1, 2009. Oral argument was heard on July 15, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

## III. Discussion

### A. Breach of Contract

Defendant argues that summary judgment is warranted in its favor on plaintiff's breach of contract claim because the undisputed facts demonstrate that Oxford did not act as an agent for defendant in contracting with plaintiff, as a matter of law. For the reasons set forth below, the Court agrees.

Because it is undisputed between the parties that no contract, be it oral, written, or implied-in-fact, existed between them, defendant would only be liable to plaintiff for breach of contract if Oxford acted as defendant's agent in its dealings with plaintiff. Under New York law, "agency is defined as 'a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 460 (E.D.N.Y. 2007) (quoting *L. Smirlock Realty Corp. v. Title Guar. Co.*, 421 N.Y.S.2d 232, 238 (N.Y. App. Div. 1979)). The principal-agent relationship rests upon the following factual requirements: "'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)); *cf. Comm. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) ("Control is not a crucial question where the issue is liability for a contract, however. If the agent had authority to enter into the contract, the principal will be bound.") (citing Restatement (Second) of Agency § 147 (1958)). Agency may be express, implied or apparent. *See Flame Cut Steel Prod. Co., Inc. v. Performance Foams & Coatings, Inc.*, 46 F. Supp. 2d 222, 228 (E.D.N.Y. 1999). "Authority that is express or implied arises from a manifestation of consent from principal to agent. Such consent can be either express or implied from the parties words and conduct as construed in light of the surrounding circumstances." *Id.* (citations and internal quotations omitted). Apparent authority, on the other hand, "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him, [and] . . . is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." *Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 373 (W.D.N.Y. 2003) (internal quotations and citations omitted); *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989).

Whether two parties are bound by a principal-agent relationship "is a mixed question of law and fact." *Comm. Union Ins. Co.*, 347 F.3d at 462. "[A]gency is a question of law for the court where the material facts from which it is to be inferred are not in dispute, the question of agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in the case." *Cabrera*, 24 F.3d at 386 n.14 (quoting 3 C.J.S. Agency § 547 (1973) (footnotes omitted)). However, "where the circumstances raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to the

7

jury." *Time Warner City Cable v. Adelphi Univ.*, 813 N.Y.S.2d 114, 116 (N.Y. App. Div. 2006) (citations omitted).

In the instant case, Afroze suggests that Ultimate Apparel had apparent authority over the actions of Oxford and, therefore, can be held liable for breach of contract. However, the following facts are uncontroverted: 1) Ultimate Apparel contracted with Oxford for the manufacture of clothing items; 2) Ultimate Apparel was unaware that Oxford then contracted with Afroze for the production of those items at the time Oxford entered into the contract with Afroze; and 3) Ultimate Apparel did not have any communications with Afroze at the time that Oxford entered into a contract with Afroze. There is no evidence, beyond the conclusory assertions of Afroze corporate representative Hassan, many made upon "information and belief," that Ultimate Apparel authorized Oxford to act on its behalf in contracting with Afroze and, in fact, Ultimate Apparel flatly denies any such fiduciary relationship with Oxford in the sworn statement of its corporate representative, which is based upon his personal knowledge of the subject matter at bar.

Although the Court recognizes that often the existence of a principal-agency relationship is a mixed question of fact and law, in this particular case, plaintiff's attempts to dispute the material facts impacting its breach of contract claim against Ultimate Apparel fall short of the standard required at this stage in the proceedings. Hassan's vague and conclusory affidavit would essentially constitute the sole basis for any disputed issues of fact on the critical elements of this contractual claim and, as set forth *supra*, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000); *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory.") (citation omitted); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007), *cert. denied*, 128 S. Ct. 288 (2007) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"). In the instant case, discovery has been conducted, and plaintiff's corporate representative states that he is "personally familiar with all of the facts and circumstances . . . surrounding this case and leading to its inception," but he remains unable to offer any *concrete particulars* refuting defendant's version of events as to this claim. For instance, Hassan asserts that "Ultimate was, at all times relevant to this matter, aware that the Garments would not be manufactured by third-party defendant Oxford, and that they would be manufactured and supplied by Afroze," (Hassan Aff. ¶ 5), but cannot direct the Court to any specific piece of evidence supporting that assertion aside from the claim that Afroze mailed a series of invoices to Ultimate Apparel at a public warehouse and at least one of those invoices was used to clear the items for entry in the country, months after the alleged contractual relationships were formed. Likewise, there is scant evidentiary support for Hassan's assertion that "it is evident that Ultimate had control over Oxford in ordering, setting specifications for the Garments, inspecting, approving and accepting them." In any event, such control is not sufficient to

establish an agency relationship.¹⁶ (*Id.* ¶ 6.) In fact, there is nothing in the record to support the contention that Ultimate Apparel was involved in the relationship between Oxford and Afroze in any manner whatsoever because plaintiff has failed to set forth any specific piece of evidence, be it documentary or testimonial, that a rational finder of fact could accept or discredit, regarding whether Ultimate Apparel's conduct, reasonably interpreted, caused Afroze to believe Ultimate Apparel consented to having Oxford act on its behalf at the time Oxford ordered the clothing items from Afroze. *See, e.g., Paul T. Freund Corp.*, 288 F. Supp. 2d at 374 ("No evidentiary proof in admissible form has been presented to demonstrate that [retailer] intended [distributor] to act as its agent for the project rather than as an independent contractor . . . . [Plaintiff manufacturer] has failed to show any act or conduct on [retailer's] part communicated to [plaintiff] that would give rise to a reasonable belief by [plaintiff] that [distributor] was the apparent agent of [retailer]."). As further proof that no such evidence exists, plaintiff's memorandum of law states the applicable legal standard for this claim and then simply repeats the same conclusory assertions from the complaint and the Hassan affidavit.¹⁷ If plaintiff was opposing a motion to dismiss versus one for summary judgment, its arguments would be sufficient. However, at this juncture, plaintiff must set forth specific evidence indicating that a trial is needed. It has failed to do so. Therefore, the Court finds that plaintiff has failed to raise any genuine issues of material fact sufficient to defeat defendant's motion for summary judgment on the breach of contract claim and that motion is granted.

## B. Account Stated

Defendant next argues that summary judgment is warranted dismissing plaintiff's claim for account stated because plaintiff has failed to raise any genuine issues of material fact as to the elements of that cause of action. As set forth below, the Court disagrees.

An account stated is an "'agreement, express or implied, . . . independent of the

---

¹⁶ Plaintiff cites to the purchase orders specifying the type of clothing items to be produced as evidence that Ultimate Apparel asserted "control" over Oxford's actions in contracting with Afroze. However, such an argument is unavailing, as "the evidence [i.e. the purchase orders] shows that [the retailer] maintained control only over the finished product, not the means of production. The means of production was controlled independently by [the distributor]." *Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 374 (W.D.N.Y. 2003).

¹⁷ At oral argument, plaintiff's counsel stated that the record contains evidence that Ultimate Apparel hired an "inspector" to travel to Pakistan to examine the goods that Afroze was manufacturing, thereby raising an issue of fact over whether this alleged conduct could lead to a reasonable belief that Ultimate Apparel had cloaked Oxford in apparent authority to contract on its behalf. Counsel was invited to submit a letter directing the Court's attention to that specific record citation. Counsel was unable to do so and, indeed, a careful review of the record indicates that no such evidence exists. Tausif Hassan states, in his affidavit, that "Ultimate had an agent on sight to inspect the Garments prior to packaging and shipping" and cites to the deposition testimony of Evan Platt in support of that statement. However, the cited deposition testimony actually states as follows: "PLATT: *Oxford* should have – we were told *Oxford* had a quality control team on the floor as the goods were being made." (Platt Dep. at 87 (emphasis added).)

9

underlying agreement, as to the amount due on past transactions.'" *Leepson v. Allan Riley Co., Inc.*, No. 04 Civ. 3720 (LTS) (AJ), 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006) (quoting 1 N.Y. Jur. 2d Accounts & Accounting § 10 (2006)). Such a claim may exist "[e]ven though there may be no express promise to pay, yet from the very fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing." *Id.* (internal quotation and citation omitted). A plaintiff alleging a claim of account stated must demonstrate that "(1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, No. 06 Civ. 52 (JGK), 2006 WL 2337186, at *12 (S.D.N.Y. Aug. 11, 2006). "Acceptance as correct and a promise to pay the amount stated is implied where a defendant receives and retains invoices without objection in a reasonable period of time." *Leepson*, 2006 WL 2135806, at *4 (citing *Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Credit Corp.*, 644 N.Y.S.2d 206, 207 (N.Y. App. Div. 1996)). "Where, however, plaintiff fails to prove that such invoices were properly addressed and mailed, and there is no evidence of a regular office mailing procedure, there should be no presumption of receipt[.]" *Melito & Adolfsen, P.C. v. Travelers Indem. Co.*, 872 N.Y.S.2d 692, 692 (N.Y. Sup. Ct. Jul. 24, 2008) (citing *Morrison Cohen Singer & Weinstein, LLP v. Brophy*, 798 N.Y.S.2d 379, 380-81 (N.Y. App. Div. 2005)); *see also Lankler Siffert & Wohl, LLP v. Rossi*, 287 F. Supp. 2d 398, 409 (S.D.N.Y. 2003) ("'New York law holds that when . . . there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received.'") (quoting *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

In the instant matter, there is evidence that plaintiff presented the account by mailing the invoices in question to the public warehouse in Newark, New Jersey where defendant rented space to accept international shipments. However, defendant disputes that it received those invoices, asserting that it first saw these documents after the onset of this litigation. This is clearly an issue of disputed fact which precludes summary judgment on the account stated claim, for if a rational finder of fact credits plaintiff's version of events, defendant's receipt of the invoices and failure to object in a reasonable period of times implies an acceptance of the amount stated as correct and a promise to pay. Accordingly, defendant's motion for summary judgment as to this claim is denied.

### C. Quasi-Contract

Finally, defendant seeks summary judgment on plaintiff's quasi-contract claim, pled in plaintiff's complaint as separate claims of *quantum meruit* and unjust enrichment, arguing that enforceable contracts between Ultimate Apparel and Oxford, and Oxford and Afroze, respectively, govern the subject matter of the case at bar.[18]

---

[18] Ultimate Apparel also argues that Afroze's quasi-contractual claim fails because it did not perform any services, but rather manufactured goods. However, "[w]hile most of the cases [addressing claims of *quantum meruit*] concern services, some do involve the sale of goods or the rendering of services in connection with the sale of goods." *Cyberchron Corp. v. Calldata Systems Development, Inc.*, 831 F. Supp. 94, 110 (E.D.N.Y. 1993). Therefore, plaintiff's claim does not fail on the grounds that it did not "render services."

"In order to recover in *quantum meruit* under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted)); *see Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Unjust enrichment is also a quasi-contractual remedy, pursuant to which a litigant must establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *In re Mid-Island Hosp., Inc. v. Empire Blue Cross and Blue Shield*, 276 F.3d 123, 129 (2d Cir. 2002) (internal quotation and citation omitted). In bringing a claim of unjust enrichment, "[i]t is the plaintiff's burden to demonstrate that services were performed *for the defendant* resulting in the latter's unjust enrichment, and the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537, 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003) (quoting *Clark v. Daby*, 751 N.Y.S.2d 622, 623-24 (N.Y. App. Div. 2002) (emphasis in original)); *see Kagan v. K-Tel Entm't, Inc.*, 568 N.Y.S.2d 756, 757 (N.Y. App. Div. 1991) ("[A]s reflected in the common law of the various states, to recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery.") (internal citations omitted). A plaintiff may only pursue relief under either theory, though, in the absence of an agreement between the parties, be it oral, written or implied-in-fact. *See, e.g., Beth Israel Med. Ctr.*, 448 F.3d at 586 (citing *Goldman v. Metro Life Ins. Co.*, 807 N.Y.S.2d 583 (N.Y. 2005)).

In the instant matter, plaintiff asserts that should the Court determine (as it has), that no contract governed the relationship between plaintiff and defendant, it is entitled to relief under a theory of quasi-contract for the manufacture of clothing items at issue, as defendant benefitted at the plaintiff's expense when it received the goods manufactured by plaintiff. Defendant asserts that the existence of valid, enforceable contracts between Ultimate Apparel and Oxford, and Oxford and Afroze, respectively, preclude any such claim. Such an argument is unavailing, as it is well-settled that "[a] party, whether or not it is in a contractual relationship with another, 'may incur quasi-contractual obligations to a *third party with whom it has not contracted*, by virtue of its direct representations to that party.'" *Aniero Concrete Co., Inc. v. New York City Const. Auth.*, No. 94 Civ. 3506 (CSH), 2000 WL 863208, at *18 (S.D.N.Y. June 27, 2000) (emphasis added) (quoting *U.S. East Telecomm., Inc. v. U.S. West Commc'ns Servs., Inc.*, 38 F.3d 1289, 1297 (2d Cir. 1994)); *see also EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 401 (2d Cir. 1997) (subcontractor subject to enforceable contract with contractor may also pursue recovery from landowner who engaged contractor under theory of quasi-contract if "the landowner acted in such a way as to incur obligations to the subcontractor outside the contractual structure").

In the instant case, the Court has determined, as set forth *supra*, that no contract existed between plaintiff and defendant; however, assuming *arguendo* that the purchase orders that plaintiff received from Oxford constituted a valid contract governing the manufacture of the clothing, the existence of such a contract does not bar quasi-contractual relief from *defendant* if, in fact, defendant "expressly agreed to pay [plaintiff] or that 'the circumstances surrounding the parties' dealings can be found to have given rise to an obligation' by [defendant] to pay [plaintiff]." *Aniero Concrete Co., Inc.*, 2000 WL 863208, at *19 (quoting *U.S. East Telecomm., Inc.*, 38 F.3d at 1298). To that end, factual disputes regarding representations defendant may have made to plaintiff regarding payment *after* the initial agreement between plaintiff and Oxford was made preclude defendant's motion for summary judgment on this claim. Specifically, plaintiff has introduced evidence that it sent invoices for the clothing items in question along with those items to the defendant, and that the shipping agent hired to clear the items through United States Customs utilized those invoices in doing so. Construing this evidence in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, plaintiff has submitted sufficient evidence to create a genuine issue of disputed fact regarding whether communications took place between plaintiff and defendant that facilitated the shipment of the goods into the United States, and whether such communications included a representation of promised remuneration. Construing the evidence most favorably to the plaintiff, plaintiff could demonstrate that defendant benefitted from plaintiff's expense and equity and good conscience require restitution because plaintiff acted at defendant's behest. Accordingly, defendant's motion for summary judgment dismissing plaintiff's quasi-contractual claim is denied.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment dismissing plaintiff's breach of contract claim is GRANTED. Defendant's motion for summary judgment as to all other claims is DENIED.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   July 20, 2009
         Central Islip, New York

\* \* \*

The attorneys for plaintiff are Michael L. Shanker and Neil Adam Bloom, Esqs., Shanker Law Group, 101 Front Street, Mineola, New York 11501. The attorney for defendant is Steven M. Lester, Esq., La Reddola, Lester & Associates, LLP, 600 Old Country Road, Suite 224, Garden City, New York 11530.